# In the United States Court of Federal Claims

No. 16-1421C

(Filed: November 7, 2017)

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
                                                   *
EFFICIENT ENTERPRISE                               *
ENGINEERING, INC.,                                 *
                                                   *
            Plaintiff,                             *
                                                   *
      v.                                           *
                                                   *
THE UNITED STATES,                                 *
                                                   *
            Defendant.                             *
                                                   *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

## DISCOVERY ORDER

    This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by the Rules of the Court of Federal Claims ("RCFC"). It also implements the parties' agreement concerning the application of Federal Rule of Evidence 502(d). This Order may be modified in the Court's discretion or by agreement of the parties. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

1. The parties agree that the proportionality standard set forth in RCFC 26(b)(1) should be applied to the discovery in this case, including the preservation, collection, search, review, and production of ESI.

2. Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI production:

   a. <u>Format</u>. Responsive ESI and imaged hard copy shall be produced in the format outlined below.

      i. *Image File Format*. All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

    (1)    All TIFF file names shall include the unique Bates number burned into the image.

    (2)    All TIFF image files shall be stored with the ".tif" extension.

    (3)    Images shall be OCR'd using standard COTS products.

        (a)    An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

        (b)    All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.

        (c)    No image folder shall contain more than 2000 images.

ii.    *Concordance® Image Cross Reference file*: Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.

    (1)    Image Cross Reference Sample Format:

    ABC00000001,OLS,D:\DatabaseName\Images\001\ABC00000001.TIF,Y,,,

    ABC00000002,OLS,D:\DatabaseName\Images\001\ABC00000002.TIF,,,,

    ABC00000003,OLS,D:\DatabaseName\Images\001\ABC00000003.TIF,,,,

    ABC00000004,OLS,D:\DatabaseName\Images\001\ABC00000004.TIF,Y,,,

iii.    *Concordance® Load File*: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

    (1)    Text delimited load files are defined using the standard Concordance delimiters. For example:

    Field Separator    ¶ or Code 020

    Text Qualifier  þ or Code 254

  (2) This load file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.

  (3) There should be one line for every record in a collection.

  (4) The load file must contain a header listing the metadata/database fields contained within. For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

    þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

 iv. *The extracted/OCR text* should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

 v. *Directory and folder structure*: The directory structure for productions should be:

  \CaseName\LoadFiles

  \CaseName\Images < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)

  \CaseName\Natives <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)

  \CaseName\Text <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)

b. <u>Required Metadata/Database Fields</u>.  At a minimum, responsive documents must be produced with the following fields.

- DOCID
- AUTHOR
- BEGDOC
- ENDDOC
- GROUPID
- PARENTID
- ATTACHID
- ATTACHLIST
- BEGATTACH
- ENDATTACH

- FILE NAME
- DOCDATE
- DATE TIME CRTD
- DATE TIME MOD
- NATIVE LINK (for files produced in native format)
- TEXT FILEPATH

Furthermore, any responsive e-mails must be produced with the following additional fields when available:

- DATE TIME SENT
- DATE TIME RCVD
- SUBJECT
- TO
- FROM
- CC
- BCC

c. <u>Spreadsheets & Presentations</u>. All spreadsheet and presentation files (*e.g.*, Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (*i.e.*, in native format), with an associated placeholder image and endorsed with a unique Bates number. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files. Images of presentation files shall also be produced.

d. <u>Embedded Files</u>. All non-graphic embedded objects (*e.g.*, Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

e. <u>No Backup Restoration Required</u>. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes (*e.g.*, backup tapes, disks, storage area networks ("SANs")) to comply with its discovery obligations in the present case.

f. <u>Voicemail and Mobile Devices</u>. Absent a showing of good cause, voicemails, PDAs and mobile phones are deemed not reasonably accessible under RCFC 26 and need not be collected and preserved.

3. General ESI production requests under RCFC 34 and 45 shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail, parties must propound specific e-mail production requests.

a. E-mail production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

    b.    The parties will endeavor to phase e-mail production requests to occur after the parties have exchanged initial disclosures and produced any basic contract, financial and technical documentation responsive to discovery propounded by the parties.  Nothing in this Order, however, shall require the parties to agree or the Court to order that the parties' initial disclosures and/or production of basic contract, financial and technical documentation responsive to discovery propounded by the parties is sufficient or has been completed before either party is entitled to propound e-mail production requests.

After the time period described above in sub-Paragraph (b), the parties will negotiate case-appropriate limitations on e-mail custodians and search methodologies that reduce the risk of overproduction.

4.    Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Nothing in this Order prevents the parties from agreeing to phase production of ESI based on topics and/or custodians.

5.    Absent a showing of good cause, communications involving trial counsel for the respective parties that post-date the filing of the Complaint in the U.S. Court of Federal Claims need not be placed on a privilege log.

6.    Pursuant to Federal Rule of Evidence 502(d):

    a.    In connection with this litigation, the inadvertent disclosure or production of privileged or work-product protected documents, ESI, communications, or information (in this Section 6, "documents"), is not a waiver of the privilege (including governmental privileges) or protection from discovery in this case or in any other federal or state proceeding.

    b.    The inadvertent disclosure of privileged or protected documents in this litigation shall not constitute a subject matter waiver of the privilege or protection in this or any other proceeding regardless of the standard of care or specific steps taken to prevent disclosure.  For example, the mere production of ESI in this case as part of a mass production shall not itself constitute a waiver for any purpose.

    c.    If a party receives documents that the producing party specifies and asserts is privileged or protected, and the receiving party does not dispute this assertion of privilege or protection, the receiving party must either: a) promptly return the specified documents and any copies; or b) destroy the specified documents and certify to the producing party that the documents, copies and any notes taken about the documents have been destroyed.  If the receiving party disclosed the document before receiving notice from the producing party, it must notify the producing party of the disclosure and take reasonable steps to retrieve the document.

    d.    If a party receives documents that the producing party asserts is privileged or protected, and the receiving party disputes this assertion of privilege or protection, the receiving party shall not use those documents in this case (*e.g.*, filed as an

       exhibit to a pleading, used in deposition).  Instead, the receiving party will sequester the specified documents, and the parties will promptly meet and confer.  If the parties are unable to come to an agreement about the privilege assertions, the receiving party may make a sealed motion for a judicial determination of the privilege claim.

    e.    Nothing contained in this Order is intended to or shall serve to limit a party's right to conduct a review of documents (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

7.    Except as expressly stated, nothing in this Order affects the parties' discovery obligations under RCFC.

 

        s/Mary Ellen Coster Williams
        **MARY ELLEN COSTER WILLIAMS**
        **Judge**